# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KURT FUQUA, | ) |
| Plaintiff, | ) |
| | ) No. 14 C 216 |
| v. | ) |
| | ) Judge John J. Tharp, Jr. |
| SVOX AG and SVOX USA, INC., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Kurt Fuqua sued his former employer under the whistleblower provision of the Sarbanes–Oxley Act, 18 U.S.C. § 1514A, alleging retaliation for whistleblowing regarding an intellectual property assignment clause to which he was asked to assent and which he believed to violate state and federal law. For the following reasons, the defendants' motion to dismiss the complaint is granted. Fuqua's motion to stay a related arbitration proceeding is denied.

### I. Background

#### A. Fuqua's Employment and Termination

Fuqua alleges that in 2009, he was an executive employee of the defendants, SVOX AG and SVOX USA, Inc. (This opinion will refer to the defendants collectively as "SVOX" unless it is necessary to distinguish between them). In July 2009, SVOX asked Fuqua and another employee to sign a new employment agreement with a new intellectual property assignment clause as a condition of continued employment. According to Fuqua, the clause constitutes a "misappropriation scheme" on the defendants' part to defraud various other parties and to misappropriate their intellectual property in violation of state and federal law. Fuqua voiced his concerns to SVOX, declined to sign the agreement, and was subsequently terminated.

### B. Fuqua's Claims and Litigation

In this case, Fuqua alleges that SVOX retaliated against him in violation of Section 806 of the Sarbanes–Oxley Act of 2002, 18 U.S.C. § 1514A. He alleges that SVOX terminated him and withheld his wages as retaliation for raising his concerns internally. He also claims that on the day that he made a protected disclosure raising concerns about the alleged scheme, SVOX began actually misappropriating his intellectual property in retaliation for his having refused to sign on to the new employment agreement.

This is not the only proceeding pertaining to issues arising from this course of events. After SVOX notified him of his termination, Fuqua filed a demand for arbitration on December 8, 2009, with the American Arbitration Association ("AAA"), alleging, among other things, breach of contract and unauthorized withholding of wages. Less than a month later, on January 3, 2010, Fuqua filed a second demand for arbitration with the AAA on the same grounds and claiming damages of $10,000. The AAA consolidated these arbitration demands. SVOX USA, in turn, filed a state court complaint seeking the return of computer equipment and software that it claimed contained confidential and proprietary information, but it voluntarily dismissed that complaint by March 18, 2010.

In August 2011, while the AAA arbitration was still pending, Fuqua filed a complaint in this Court alleging retaliatory discharge under the American Reinvestment and Recovery Act ("ARRA") and various state law causes of action arising from his termination and the events that led to it. *See Fuqua v. SVOX AG*, No. 11 C 5376, (N.D. Ill. Aug. 9, 2011) (Dkt. 1). In March 2012, the district court dismissed the ARRA retaliation claim with prejudice and the state law claims without prejudice. The Seventh Circuit recently upheld the dismissal of that case on the

grounds that ARRA did not apply. *See Fuqua v. SVOX AG*, No. 12-1870, --- F.3d ---, 2014 WL 1999040 (7th Cir. May 16, 2014).

After the ARRA claim was dismissed, Fuqua filed on April 4, 2012, a complaint in state court reasserting his state law causes of action. About a week later, on April 13, 2012, he filed a motion to stay the AAA arbitration (which, recall, Fuqua had initiated) pursuant to sections 1 and 2(b) of the Illinois Uniform Arbitration Act; the Circuit Court granted that motion on April 26. Almost simultaneously, SVOX attempted to remove the case to federal court on the basis of diversity jurisdiction, but in August 2012, the district court remanded the case after concluding that there was not complete diversity. *See Fuqua v. SVOX AG et al*, No. 12 C 3058 (N.D. Ill. Aug. 22, 2012) (Dkt. 28).

Following remand, SVOX filed in October 2012 a motion to stay the state court case and to compel arbitration of the claims asserted in that case, as well as a motion to lift the stay of arbitration that had been entered in April. The Circuit Court granted SVOX's motions in March 2013 and that ruling was, in all material respects, affirmed by the Illinois Appellate Court on June 9, 2014. *See Fuqua v. SVOX AG et al*, No. 12 L 3607 (Ill. App. Ct. June 9, 2014).

While SVOX's arbitration motions were pending, Fuqua also filed two OSHA Complaints. The first ("Complaint 1") was filed on November 16, 2012, and was amended several times. The claims it asserts mirror those included in Fuqua's present complaint in this Court. Citing Sarbanes–Oxley as the basis for his complaint, Fuqua alleged that after he discovered and raised concerns about SVOX's unlawful scheme to misappropriate intellectual property of third parties, SVOX retaliated by withholding his wages and terminating him; he also alleged that SVOX "succeeded in misappropriating some of the sought intellectual property," and that SVOX continues to retain and benefit from that intellectual property. The second

3

("Complaint 2"), which asserted similar claims but additionally included two of SVOX's attorneys as defendants, was filed on December 22, 2013. The procedural history with respect to these two OSHA complaints is discussed in connection with the Court's consideration of SVOX's contention that the Court lacks jurisdiction to consider Fuqua's whistleblower claims.

## II. Discussion

Before the Court now are two motions. First is SVOX's motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6). Second is the plaintiff's motion to stay the arbitration proceeding that *he* initiated in the wake of his termination in the fall of 2009. Because it is largely dispositive of the motion to stay arbitration, the Court will address the motion to dismiss first.

### A. Motion to Dismiss

Rule 12(b)(1) allows courts to dismiss an action for lack of subject matter jurisdiction. On a 12(b)(1) motion, the plaintiff bears the burden of establishing subject matter jurisdiction. *See Sapperstein v. Hager*, 188 F.3d 852, 855 (7th Cir. 1999); *Kontos v. United States Dept. of Labor*, 826 F.2d 573, 576 (7th Cir. 1987). When considering such a motion, a court may consider affidavits and other relevant evidence. *Kontos*, 826 F.2d at 576.

Dismissal under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 558 (2009)). The complaint must contain allegations that state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. at 570. In reviewing a plaintiff's claim, the court must construe all of the factual allegations as true and draw all reasonable inferences in the plaintiff's favor, but legal conclusions are not entitled to the presumption of truth. *Virnich*, 664 F.3d at 212.

1. **Whistleblower Protections**

Section 806 of the Sarbanes–Oxley Act prohibits publicly traded companies and their employees from retaliating against an employee who provides information or otherwise assists in an investigation regarding conduct "which the employee reasonably believes constitutes a violation of section 1341 [mail fraud], 1343 [wire fraud], 1344 [bank fraud], or 1348 [securities and commodities fraud], any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders, when the information is provided to or the investigation is conducted by . . . a person with supervisory authority over the employee (or such other person working for the employer who has the authority to investigate, discover, or terminate misconduct) . . . ." 18 U.S.C. § 1514A. To establish a *prima facie* case, the employee must allege that (1) he "engaged in a protected activity;" (2) "[t]he respondent knew or suspected that the employee engaged in the protected activity;" (3) "[t]he employee suffered an adverse action;" and (4) "[t]he circumstances were sufficient to raise the inference that the protected activity was a contributing factor in the adverse action." 29 C.F.R. § 1980.104(e)(2).

The Department of Labor ("DOL") administers numerous whistleblower protection provisions. The Secretary of Labor has delegated investigatory and initial adjudicatory responsibility over claims under § 1514A to DOL's Occupational Safety and Health Administration ("OSHA"). *See Lawson v. FMR LLC*, 134 S. Ct. 1158, 1163–64 (2014) (citing 78 Fed. Reg. 3918 (2013)). An order issued by OSHA may be appealed to an administrative law judge ("ALJ"), and then to DOL's Administrative Review Board ("ARB"). 29 C.F.R. §§ 1980.104 to 1980.110. The ARB's determination on a § 1514A claim constitutes the agency's final decision; it is reviewable in federal court. If, however, the ARB does not issue a final decision within 180 days of the filing of the complaint, and the delay is not due to bad faith on

the claimant's part, the claimant may proceed to federal district court for *de novo* consideration of the claim. 18 U.S.C. § 1514A(b). An employee who prevails on a § 1514A claim is entitled to "all relief necessary to make the employee whole," including reinstatement with seniority, backpay with interest, and costs. *Lawson*, 134 S. Ct. at 1163–64 (quoting § 1514A).

## 2. Jurisdiction

SVOX first maintains that in filing this case, the plaintiff is attempting to appeal the DOL's dismissal of his first OSHA complaint, which was filed on November 16, 2012, and was subsequently amended five times, most recently on October 28, 2013. As SVOX notes, this Court has no jurisdiction to review final action by DOL regarding a Sarbanes–Oxley whistleblower complaint; review of such decisions must occur in the Court of Appeals. But this is not an appeal of final agency action on Complaint 1, for the simple reason that there has not yet been final agency action on that complaint. The ALJ decision on Complaint 1 is still on review before the ARB.

The DOL's established procedure for processing and ruling on an administrative whistleblower claim "necessarily defines what constitutes a 'final decision' of the Secretary." *Stone v. Instrumentation Laboratory Co.*, 591 F.3d 239, 245 n.5 (4th Cir. 2009). "The first DOL administrative ruling on a Sarbanes–Oxley whistleblower claim takes the form of preliminary OSHA findings, which can thereafter be challenged before an ALJ. . . . A complainant can further challenge an adverse ALJ ruling through the filing of a 'petition for review' with the ARB. If the ARB does not accept the petition for review, then the decision of the [ALJ] will become the final order of the Secretary. If, however, the ARB accepts a complainant's petition for review, the decision of the administrative law judge will be inoperative unless and until the Board issues an order adopting the decision." *Id.* at 245 (quotation marks and citations omitted).

After the Secretary issues a final decision, that decision can be appealed directly to the appropriate circuit court of appeals. *See* 18 U.S.C. § 1514A(b)(2)(A); 49 U.S.C. § 42121(b)(4).[1]

In *Stone*, the Fourth Circuit reversed a district court ruling holding that the plaintiff was estopped from bringing suit in the district court after an ALJ ruled against that plaintiff because the statute vests jurisdiction in district court in absence of "final" agency action and the ALJ ruling was not "final agency action" when that ruling had been appealed to the ARB. The court recognized that this approach may result in some duplication of effort between the ALJ and the district court, but that is the consequence of the statutory language, which, in this Court's view, plainly anticipates that possibility because by requiring "final" agency action, it recognizes that the agency may have engaged in preliminary action.

Under 18 U.S.C. § 1514A(b)(1)(B), this Court has jurisdiction to hear a Sarbanes–Oxley whistleblower claim if the DOL "has not issued a final decision within 180 days of the filing of the complaint and there is no showing that such delay is due to the bad faith of the claimant." So the next question is whether the requisite 180 days have elapsed. The plaintiff says yes, at least as to his first OSHA complaint, which was filed more than 180 days before he filed this suit and as to which the Secretary has not yet issued a final decision. The defendants say no, because the plaintiff amended Complaint 1 numerous times, including a final amendment on October 28, 2013, just 77 days before this case was filed; each amendment, they maintain, effectively acted

---

[1] If a "final" administrative decision has not been timely issued and a complainant desires *de novo* review in district court, DOL regulations also provide that a complainant must file a notice of the federal court complaint with the ALJ or ARB, depending on where the proceeding is pending. 29 C.F.R. § 1980.114(b). Failure to follow these regulations does not operate to deprive federal courts of jurisdiction conferred by Congress; rather, the DOL is empowered to address a claimant's failure to provide the required notice insofar as it may affect the DOL's procedures.

as a new complaint and so started a new 180-day period. The defendants do not, however, identify any authority for the proposition that an amended pleading restarts the 180 day jurisdictional clock, and the Court is not aware of any authority that so holds. The purpose of the statutory provision, plainly, is to ensure that prompt action is taken on the complaint; if not by the DOL within 180 days, then by the district court. The relevant question, which the bad faith provision speaks to, is whether the reason for the delay of more than 180 days can be attributed to the claimant. Here, one could argue that it can be, because he repeatedly amended his complaint. But nothing has been presented to suggest that any of the amendments to Complaint 1 actually slowed down the process at all. To the contrary, the complaint was even amended after the initial OSHA ruling without delaying further review of that ruling.

Furthermore, even if the jurisdictional clock did not start until the third amended complaint was filed on May 30, 2013—which was the last amendment before OSHA ruled—and ended with the ALJ ruling rather than the ARB's review of that petition, it would still be untimely because the ALJ ruling was issued on November 27, 2013, which is *181* days after the filing of the third amended complaint. Thus, even if Fuqua had not sought ARB review, he would still be entitled to assert a claim in the district court. Finally, even if measured from the last amended complaint, filed on October 28, 2013, the 180-day clock has expired without final agency action. The time elapsed since that date is now well over 200 days. Even if he was premature in filing the complaint in this court in January, under Rule 15(d), he could cure that problem by filing an amended complaint in this Court today.

In the absence of any authority to the contrary, and any evidence that the subsequent amendments of the OSHA complaint or any other action by the plaintiff delayed the DOL's agency process, the Court concludes that the amended pleadings did not reset the jurisdictional

clock and that it therefore has jurisdiction to hear the plaintiff's complaint. The agency did not render a final decision on Complaint 1 within 180 days; § 1514A(b)(1)(B) therefore applies.[2]

### 3. "Covered Person"

SVOX offers several other arguments for why the case should be dismissed. First, SVOX points out that Sarbanes–Oxley applies only to employees of public companies and there is no dispute here that the defendants were not publicly traded companies during the period of the plaintiff's employment. SVOX argues, therefore, that Sarbanes–Oxley does not apply to the plaintiff's claims.

As already noted, Section 806 prohibits covered entities from retaliating against whistleblowers. 18 U.S.C. § 1514A ("No [public] company . . . may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment . . . ."). Regulations interpreting Sarbanes–Oxley define "employee" as "an individual presently or *formerly working for a covered person*, an individual applying to work for a covered person, or an individual *whose employment could be affected by a covered person*." 29 C.F.R. § 1980.101(g) (emphasis added). "Covered person means any company," 29 C.F.R. § 1980.101(f), and "company" means "any company with a class of securities registered

---

[2] The ALJ rendered a decision on Complaint 2 on June 4, 2014. The parties have not advised the Court whether the disposition of that complaint bears at all on the jurisdictional issues presented by the plaintiff's complaint in this Court or the defendants' motion. Nor have they indicated whether Fuqua timely filed a petition for review of that decision with the ARB. If he did not, or if he did and the ARB did not accept the petition for review within thirty days of the filing of the petition, then the ALJ's decision regarding Complaint 2 would have become the final order of the Secretary. 29 C.F.R. § 1980.110(a). In the first of those scenarios, the decision would not be subject to judicial review. 29 C.F.R. § 1980.110(b). In the latter scenario, the decision would be appealable only to the Court of Appeals. 49 U.S.C. § 42121(b)(4). If, however, Fuqua filed a petition for review and the ARB accepted it within thirty days of the petition being filed, 180 days have now passed without final agency action since Fuqua filed Complaint 2 on December 22, 2013, and this Court would have jurisdiction.

under section 12 of the Securities Exchange Act of 1934 . . . or any company required to file reports under section 15(d) of the Securities Exchange Act . . . ." 29 C.F.R. § 1980.101(d).

Fuqua argues that he "formerly work[ed] for a covered person."[3] In support of his argument that he "formerly worked for a covered person," Fuqua cites *Lawson v. FMR LLC*, 134 S. Ct. 1158 (2014), in which the Supreme Court extended § 1514A whistleblower protection to employees of privately held contractors and subcontractors who do contract work for public companies. The extension of coverage to certain private company employers in *Lawson* rested on the fact that the employer at issue was a contractor to a public entity (a mutual fund) that itself had no employees, therefore any whistleblowing employee would necessarily be on another company's payroll. While the Court noted that the plaintiff–petitioners were "former employees of private companies that contract to advise or manage mutual funds," *Lawson*, 134 S. Ct. at 1161, Fuqua is wrong to suggest that *Lawson* extended SOX to cover cases that involve any and all former employees of private companies. That was not a case in which the employer's status changed after the employee left its employ; instead, it was a case in which the employer was found to be within the statute's sights during the time it employed the plaintiff–petitioners. Fuqua's *Lawson* argument is thus unavailing.[4]

---

[3] Fuqua also perfunctorily states in his Response that he qualifies as someone "whose employment could be affected by a covered person" under §1980.101(g), although he only develops his argument as to the former definition. Resp. 13. Accordingly, the Court disregards it. *See Argyropoulos v. City of Alton*, 539 F.3d 724, 738 (7th Cir. 2008) (citations omitted) (noting that undeveloped arguments are waived).

[4] Fuqua briefly cites state law definitions of "employee," too, which have limited relevance in interpreting the meaning of that term in a federal statute. *See, e.g., E.E.O.C. v. Sidley Austin Brown & Wood*, 315 F.3d 696, 702 (7th Cir. 2002) (noting that classification of law firm partners under state law is not dispositive of their status as employers under federal antidiscrimination law).

Whether Fuqua is an individual who was "formerly working for a covered person" hinges on whether it is dispositive that SVOX was not a covered company under SOX *at the time that Fuqua worked there* or whether the fact that he is a former employee of an entity that is *now covered* under Sarbanes–Oxley is enough. SVOX argues that Fuqua was never an employee of a covered person, so cannot now be a former employee of a covered person. This argument—a type of anti-retroactivity argument—does not appear in any Sarbanes–Oxley case that the parties cite and the Court is aware of no Sarbanes–Oxley cases in which the argument has been considered. SVOX suggests that the Fourth Circuit's reasoning in a Title VII case is analogous enough to be persuasive. *See Depaoli v. Vacation Sales Associates, L.L.C.*, 489 F.3d 615, 622 (4th Cir. 2007). There, the Fourth Circuit read the statutory section setting damage caps in line with those defining covered employers, rejecting the possible reading of the covered employer provision that would mean that "an employer with just a handful of employees could be held accountable in the future, after it grew in size, for actions that it took while it still had less than 15 employees." *Id.* Applying similar logic here, it would not make sense to make every private employer who later goes public or is acquired by a public company subject to liability for actions it took when it was private and could not anticipate needing (or did not believe that it was required) to comply with Sarbanes–Oxley.

But in this case, a few of Fuqua's allegedly protected actions post-date the transaction by which the defendants were acquired by Nuance, a public company, in June 2011: Fuqua filed a state court suit against the defendants in 2012, and filed the OSHA action on November 16, 2012. *See* Compl. ¶ 8, 28. The "formerly worked for" definition of "employee" is susceptible to the reading that an individual who formerly worked for an entity that is now public (whether he did so before or after the company became public) and who engages in protected activity under

11

Sarbanes–Oxley after the company goes public may sue for retaliation that occurs in response to that protected activity. In the order dismissing OSHA Complaint #2, the DOL ALJ found that Sarbanes–Oxley applied because Fuqua complained of retaliatory acts that occurred after the acquisition by Nuance, and thus after SVOX was covered as a subsidiary of a public company. *See* Dkt. 21-1, at 4 (citing DOL cases for the proposition that the date of the retaliatory act determines whether Sarbanes–Oxley applies). *Cf. Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881, 891 (7th Cir. 1996) (concluding, in a Title VII context, that "former employees, in so far as they are complaining of retaliation that impinges on their future employment prospects or otherwise has a nexus to employment, do have the right to sue their former employers"). The defendants do not offer any argument to refute this interpretation or otherwise establish that Sarbanes–Oxley does not apply to those allegedly retaliatory acts that post-date the Nuance Acquisition and Fuqua's later protected acts. And furthermore, it seems that this understanding shows why these facts fit under the rationale for the enactment of Sarbanes–Oxley, which was to prevent public companies from retaliating against people who by virtue of their employment with a covered company (here, a former rather than current employee, as allowed by the relevant regulation) had information about its fraudulent activities. Fuqua alleges that he engaged in protected activity and the defendants retaliated against him after they became covered; his claims will therefore not be dismissed on the basis that Sarbanes–Oxley does not apply.

4.     **Statute of Limitations**

Assuming that Sarbanes–Oxley applies to the particular retaliatory acts that post-date the Nuance acquisition, the next question is whether any of them occurred within the applicable limitations period. Under § 1514A, an action must be commenced no later than 180 days "after the date on which the violation occurs, or after the date on which the employee became aware of

the violation." SVOX and Fuqua cite the relevant limitations period as the time period following May 20, 2012, for the claims covered by OSHA Complaint 1 and the time period following June 25, 2013, for the claims covered by OSHA Complaint 2. Many of the alleged adverse actions that Fuqua identifies occurred before he left SVOX in late 2009 or early 2010, however, so claims based on those actions (*e.g.*, his claim that SVOX retaliated by withholding wages) are plainly time-barred. The only exceptions appear to be his claims regarding the misappropriation of his intellectual property and the various litigation activities of the defendants.

Turning first to SVOX's litigation activities that Fuqua asserts were retaliatory, two appear to fall within the relevant period: the filing of a brief on July 3, 2013, relating to arbitration, and the defense against Fuqua's wage claim.[5] Compl. ¶¶ 9, 38. Despite alleging them in the Complaint, Fuqua does not assert in his Response to the defendants' motion that these actions are the retaliation on which his claims here are based. Nor does it appear that he could— while it is not exactly clear which litigation-related activities he contests, the actions he cites appear to involve legal actions instituted by Fuqua against SVOX. Responding to legal proceedings is not retaliation.

And with respect to the alleged misappropriation of his own intellectual property, Fuqua claims that the misappropriation and misattribution began on July 9, 2009, and that it continues today, although he did not discover it until June 6, 2012. This timeline brings the misappropriation into the limitations periods if the defendants' allegedly retaliatory initial intent

---

[5] Fuqua also claims that SVOX instituted meritless civil actions against him, Compl. ¶ 40, but does not offer detail on what those were or when they occurred, therefore the Court cannot determine that they took place within one of the relevant limitations periods.

is imputed to the later acts of misappropriation.[6] Thus, the Sarbanes–Oxley 180-day statute of limitations does not bar Fuqua's claim that the defendants' retaliated against him by misappropriating his intellectual property.

### 5. Protected Activity

Even though Fuqua's claim regarding the alleged retaliatory misappropriation of his intellectual property is timely, it fails for another reason: He has not alleged that he engaged in protected activity in the first place. Sarbanes–Oxley prohibits retaliation against an employee who blows the whistle on "conduct which the employee reasonably believes constitutes a violation of section 1341, 1343, 1344, or 1348, any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders." 18 U.S.C. § 1514A(a). The employee's belief that the conduct violates those particular provisions must be both subjectively held and objectively reasonable. *See Welch v. Chao*, 536 F.3d 269, 275 (4th Cir. 2008); *Robinson v. U.S. Dep't of Labor*, 406 F. App'x 69, 72 (7th Cir. 2010) (citing *Chao*, 536 F.3d at 275). Fuqua alleges that he raised concerns about "a scheme by SVOX USA to misappropriate trade secrets from various parties including publically-traded U.S. corporations," and further alleges that such a scheme would injure the shareholders of those corporations. Compl. ¶¶ 12, 51. He identifies 18 U.S.C. § 1341 and §1343 as the two relevant

---

[6] The Court does not agree with SVOX's argument and the ALJ who found that the acts of misappropriation that Fuqua alleges were retaliatory were the same conduct about which he blew the whistle in the first place. While the complaint is not a model of clarity, it is clear that Fuqua raised concerns about the propriety of the intellectual property assignment clause to which he was asked to assent, including whether complying with that clause would in effect induce him to disclose the trade secrets of third parties in violation of state and federal law. The presentation of this clause to Fuqua and the process Fuqua would have had to go through to comply with it are distinct from any actual acts of misappropriation on SVOX's part, much less the misappropriation of Fuqua's own intellectual property, therefore the defendants' assertion that they must have intended the misappropriation before Fuqua blew the whistle does not follow.

14

provisions of federal law that he believed the conduct violated to bring the case under Sarbanes–Oxley, in addition to the Economic Espionage Act of 1996, 18 U.S.C. § 1831. *Id.* ¶ 52; Resp. 16.[7] But even assuming that Fuqua subjectively believed that the scheme constituted mail or wire fraud, he has not identified any reason why that belief was objectively reasonable. Mail and wire fraud require proof of "a scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. §§ 1341, 1343. But Fuqua supplies no allegations that, if true, would plausibly establish a scheme to defraud, much less that would meet the heightened pleading standards applicable to claims of fraud under Rule 9(b). *See Massuda v. Panda Exp., Inc.*, No. 13-2818, --- F.3d ---, 2014 WL 3566419, at *5 (7th Cir. July 21, 2014). Fuqua's pleadings establish only that SVOX decided to impose a condition on employment, namely the assignment of intellectual property rights. SVOX did not conceal that condition; rather, it included it in an employment agreement and notified Fuqua (an at-will employee) that assent to the condition was required in order to continue his employment. There is no allegation that SVOX falsely represented the meaning or import of the assignment clause; to the contrary, Fuqua claims that he saw the import of the inventions clause all too clearly. What Fuqua describes in his complaint is, perhaps, a heavy-handed contract negotiation, but it is not a scheme to defraud.

Nor has Fuqua explained why a violation of the Economic Espionage Act constitutes fraud or is otherwise encompassed by Sarbanes–Oxley (which does not include that statute among those within the scope of whistleblower protection). Theft of trade secrets and inducement of others to share such secrets, even if it may be unlawful, is not *per se* fraudulent or

---

[7] As noted above, Fuqua also alleged unsuccessfully in a separate suit that the conduct violated ARRA. *See Fuqua*, 2014 WL 1999040, at *1.

deceptive and Fuqua's allegations, again, fail to describe a scheme to defraud. Fuqua expresses concern over injury to other companies' shareholders stemming from the potential misappropriation that would result from complying with the assignment clause, but that is not enough to bring the case within the catch-all shareholder fraud category. "To have an objectively reasonable belief that there has been shareholder fraud, the complaining employee's theory of such fraud must at least approximate the basic elements of a claim of securities fraud," which typically include a material misrepresentation or omission, scienter, loss, and a causal connection. *Riddle v. First Tennessee Bank, Nat. Ass'n*, 497 F. App'x 588, 595 (6th Cir. 2012) (quoting *Day v. Staples, Inc.*, 555 F.3d 42, 55 (1st Cir. 2009)). Fuqua identifies no such misrepresentations or omissions. Furthermore, the defendants did not have any shareholders at the time; they could not have made misrepresentations to investors that they did not have. Even if the defendants were attempting to do something that violated some law, there exist no grounds to conclude that Fuqua could have reasonably believed it to violate the laws necessary to state a Sarbanes–Oxley whistleblower claim. That claim is therefore dismissed, without prejudice, and the Court declines to exercise supplemental jurisdiction over the remaining state law claims.

### B. Motion to Stay Arbitration

Fuqua has also moved to stay the arbitration.[8] He claims that the arbitration violates Sarbanes–Oxley, 18 U.S.C. § 1514A(e), which renders unenforceable certain provisions waiving rights and remedies or requiring arbitration of disputes "arising under" § 1514A. But as already discussed, Fuqua has not yet stated a plausible claim under that provision here, and he offers no explanation as to why his arbitration should otherwise be understood as "a dispute arising under"

---

[8] Why Fuqua seeks to stay arbitration proceedings that he initiated is a mystery as yet unexplained.

§ 1514A despite this failure. It follows that there is no basis to stay the arbitration on that ground. Fuqua also invokes ARRA as providing a basis to stay the arbitration, despite the fact that the Seventh Circuit has already determined that he does not have an ARRA claim. *See Fuqua*, 2014 WL 1999040, at *1. There are other, state-law-based issues raised by Fuqua's motion to stay, but without a viable reason for this case to be in federal court, the motion to stay is denied as moot, without prejudice to Fuqua re-raising if and when he has successfully stated a federal claim.[9]

\*   \*   \*

For the foregoing reasons, the defendants' motion to dismiss [12] is granted. The dismissal is without prejudice; if Fuqua determines that he can, consistent with the requirements of Rules 9(b) and 11, remedy the deficiencies in his complaint, he has leave to file an amended complaint within 28 days. The plaintiff's motion to stay arbitration [25] is denied without prejudice.

Date: August 1, 2014

John J. Tharp, Jr.
United States District Judge

---

[9] SVOX has suggested that, in the event that Fuqua pleads any claims that are permitted to go forward, those claims would be barred by *res judicata*. In dismissing Fuqua's present claims without prejudice, the Court intends no statement as to whether or not any re-pleaded claims would be precluded.